UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

Olee W. Robinson,

        Defendant.

Case No. 93-cr-50028

Hon. Terrence G. Berg
United States District Judge

---

**United States of America's Response to Robinson's Motion for
Reduction in Sentence (ECF No. 734)**

---

In 1993, Robinson was convicted after a jury trial of various drug, firearm,

and money laundering offenses, including a drug-related homicide. Robinson was

sentenced to life in prison. Robinson has filed numerous post-conviction motions,[1]

all of which have been denied.

### Background

Robinson has made multiple attempts to obtain release, including the four

motions associated with his most recent attempt. ECF Nos. 693, 708, 718, and 734.

Robinson operated a large drug business in Michigan for years. *United States*

---

[1] *Robinson v. Mitchell*, No. CIV.A. 3:10-2289-SB, 2011 WL 1335717, at *1–2 (D.S.C. Apr. 7, 2011), aff'd, 473 F. App'x 360 (4th Cir. 2012); ECF No. 680, PageID.17910-12 (list and summary of post-conviction motions filed by Robinson as of that date).

*v. Robinson*, 96 F.3d 1449 (6th Cir. 1996). Robinson sold cocaine in enormous quantities and laundered millions of dollars through various front companies he established. *United States v. Robinson*, 96 F.3d 1449 (6th Cir. 1996). In 1989, Robinson and a member of his drug conspiracy were robbed by Sherman Christian, who was an associate of theirs. *Id*. In return, Robinson hired one his drug couriers and two others to find and kill Christian. *Id*.

After a seven-week trial, a jury returned a guilty verdict on all counts:

- Count 1 – 21 U.S.C. § 848 Continuing Criminal Enterprise, USSG § 2D1.5
- Count 2 – 21 U.S.C. § 846 Conspiracy to Distribute Drugs, USSG § 2D1.1
- Count 3 – 21 U.S.C. § 848(e) Drug Related Murder, USSG § 2A1.1
- Count 4 – 18 U.S.C. § 922(g)(1) Felon in Possession, USSG § 2K2.1
- Count 7 – 18 U.S.C. § 1014 False Statement, USSG § 2F1.1
- Count 9 – 18 U.S.C. § 1956 Money Laundering, USSG § 2S1.1
- Count 10 – 18 U.S.C. § 1956 Money Laundering, USSG § 2S1.1
- Count 11 – 31 U.S.C. § 5324 Structuring, USSG § 2S1.3
- Count 13 – 21 U.S.C. § 841 Drug Distribution, USSG § 2D1.1
- Count 14 – 18 U.S.C. § 922(g)(1) Felon in Possession, USSG § 2K2.1

PSR ¶ 24.

Those convictions combined with an obstruction of justice enhancement[2], two-level enhancement for the dangerous weapons possessed during the conspiracy, a four-level enhancement for being a leader of the criminal activity resulted in a total offense level of 48. PSR ¶¶ 22-34. With a criminal history of IV and the statutorily mandated life sentence on Count 1, his guideline range was life. PSR ¶73.

---

[2] Testimony presented at trial indicating Robinson discussed having one of the witnesses who was testifying against him killed. PSR ¶ 22

The Court sentenced Robinson to life imprisonment on Counts 1 and 3, to be served concurrently; 60 months on Counts 4 and 11; 24 months on Count 7; 240 months on Counts 9, 10 and 13; and 120 months on Count 14. The Court ordered that the sentences on Counts 4, 7, 9, 10, 11, 13, and 14 would be served concurrently with the life sentences for Counts 1 and 3. ECF No. 191, PageID.3357-3359. The Court documented that Robinson was not separately sentenced on Count 2, as it was incorporated into count 1. *Id*. at PageID.3359.

## Discussion

A district court has "no inherent authority … to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Compassionate release is one exception that permits a district court to reduce a sentence, but only if a prisoner can meet three requirements, *United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024), after having exhausted his administrative remedies within the Bureau of Prisons (BOP), *see* 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832–36 (6th Cir. 2020).

First, the prisoner must "show that 'extraordinary and compelling reasons' warrant the reduction." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, the Court must determine

3

that reducing the sentence would be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. (quoting § 3582(c)(1)(A)). And third, "[e]ven if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with" Sentencing Commission policy, "the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

## I.     Controlling Sixth Circuit case law bars Robinson's release

The statutory provision for Count 1, 21 U.S.C. § 848, was life imprisonment. That is because the Court and PSR made the findings pursuant to 21 U.S.C. § 841(b) that would require mandatory life imprisonment with regards to Robinson's role and the amount of controlled substances involved in the offense. Because the statutory mandatory minimum penalty is life, Robinson cannot receive compassionate release.[3]

In *United States v. Bricker*, the Sixth Circuit clarified that the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)(i)) does not empower a district court to "override the statutory minimum" sentence that a defendant is serving. *United States*

---

[3] Such findings under 21 U.S.C. § 848(b) would have to be made by the jury now. *Alleyne v. United States*, 570 US 99 (2013), (all sentencing enhancements that increase mandatory minimum penalty must be proven beyond a reasonable doubt). But *Alleyne* is not retroactive, *In re Mazzio*, 756 F.3d 487, 489 (6th Cir. 2014), so it is not relevant to Robinson's claims,

*v. Bricker*, 135 F.4th 427, 447 (6th Cir. 2025); *petition for cert. filed*, Case No. 25-81 (U.S. Jul. 18, 2025).  So even if Robinson could satisfy all elements of compassionate release, he still would not be eligible for a sentence reduction: "In this light, § 3582(c)(1)(A)(i)—which says nothing at all about statutory mandatory minimums—could never empower a court to reduce a sentence below the statutory minimum portion of that sentence." *Id.*; As the Supreme Court has noted, Congress holds the 'legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta v. United States*, 488 U.S. 361, 396, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Any compassionate release granted that provides for a sentence below the statutory mandatory minimum penalties is in conflict with *Bricker,* and this Court should follow that binding decision.

## II.     The §3553(a) factors weigh against release

Even if the Court finds that Robinson's arguments for release do not run into a *Bricker* wall, the circumstances of this offense and Robinson's history and characteristics foreclose release. No discussion about his release can begin without acknowledging the immense seriousness of the offenses that he committed and—most importantly— his stubborn and continued inability to accept responsibility for those offenses. Robinson hired and orchestrated the murder of another individual, arranged for an associate to receive that individual's life insurance policy, and then attempted to hire a hit man to kill a witness in his trial. He was convicted of all

counts. And he refuses to accept responsibility even today, making wild and repeatedly rejected claims of his supposed innocence, offering baseless conspiracy theories to explain his conviction and continued incarceration. Murderers serving life sentences should rarely be awarded compassionate release. Unrepentant murderers serving life sentences should never be awarded compassionate release.

A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008-09 (6th Cir. 2020). And the Sixth Circuit will affirm a denial of compassionate release based solely on the district court's assessment of the § 3553(a) factors. *United States v. Tomes*, 990 F.3d 500, 503–04 (6th Cir. 2021).

Section 3553(a) requires the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. There is a presumption that the district court's "initial balancing of the § 3553(a) factors during [Robinson's] sentencing remains an accurate assessment as to whether those factors justify a sentence reduction[.]" *United States v. Sherwood*, 986 F.3d 951, at 954 (6th Cir. 2021). As such, Robinson "must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* If Robinson were sentenced today, his guidelines would still be a life sentence. And if Robinson were again held

6

responsible under 21 U.S.C. 848(b), the mandatory sentence would remain life imprisonment.

Robinson operated a large drug business in Michigan for years. *United States v. Robinson*, 96 F.3d 1449 (6th Cir. 1996). Robinson sold cocaine in copious amounts and laundered millions of dollars through various front companies he established. *Id*. This criminal enterprise culminated in Robinson hiring one of his drug couriers and two others to murder another. *Id*. Robinson ordered and facilitated the murder. ECF No. 185-2, PageID.3019. Robinson acquired intelligence as to the victim's whereabouts and supplied the weapons. ECF No. 386, PageID.10535. Robinson told Osborne, after the shooting, that he had paid an insurance agent to help him collect on a life insurance policy on the victim. ECF No. 186, PageID.3141-42. Upon hearing the victim was dead, Robinson said he "was happy to hear that… he was gone." ECF No. 185-2, PageID.3053.

Robinson enlisted and supervised numerous others to facilitate his activities – particularly women. ECF No. 227-2, PageID.3892. During the trial, the details about the drug conspiracy and drug related homicide came from Bowling and Osborne's testimonies. As to the drug conspiracy, Osborne testified that Robinson told West and others what to do, and that they all worked under Robinson's command. ECF No. 184, PageID.2848-49. Osborne also testified that Robinson instructed and paid him to kill Sherman Christian. ECF No. 185, PageID.3026-27.  "Olee wanted the

7

man dead." ECF No. 185, PageID.3019.  "Olee. Olee was in charge." ECF No. 184, PageID.2848- 49. "That is where I get all my instructions from, Olee." ECF No. 186, PageID.3280. "Olee was the main character." ECF No. 185, PageID.3041. After the homicide, Robinson told another individual, "I told you I was going to get that mother fucker, didn't I?" ECF No. 183, PageID.2538.

Even Robinson's then-loyal co-defendant was not immune from his intimidation. At trial, a Shiawassee County Jail Administrator testified that he found Michelle West, Robinson's co-defendant and girlfriend, crying. She stated that the household that her child was housed at received several phone calls from Robinson and that West was afraid Robinson was a threat to her child. Not only did a jury convict Robinson of a drug related murder, but his cellmate also testified at trial that Robinson tried to have a witness that was testifying against him killed. PSR ¶¶ 19, 29.

Robinson's history and characteristics do not support release. Prior to his conviction for the drug enterprise and its related homicide, Robinson had four prior criminal convictions. PSR ¶ 42. Robinson defrauded insurance companies and U.S. Bankruptcy court and received a probationary sentence. PSR ¶¶ 36-37, 39-41. Robinson was on probation much of the time he led the underlying criminal enterprise. PSR ¶¶ 39, 42.

But the most troublesome characteristic that cautions against release is his refusal to accept responsibility for his offense in this matter. Despite a jury convicting him on 10 counts, including a drug-related homicide, resulting in mandatory life sentence, he continues to make allegations of corruption and obstruction of justice by the Government, Court, and Clerk's office. (*Robinson v. Warden Schuylkill FCI*, 687 F. App'x 125, 129 (3d Cir. 2017); Justice for Olee: http://www.justiceforolee.com/home.html (last visited May 15, 2026)).  Robinson claims on that website:

> I say no dope because I was framed. I have never used or possessed any illegal drugs in my life, and that NO drugs were introduced at my trial. This entire drug case against me was a "scheme" Manufactured by BIGOTRY and RACIAL HATRED. This prosecutor's employment at the U.S. Department of Justice has since been TERMINATED.

Aside from the contention that no drugs were introduced at his trial, these claims are false. They are contradicted by his conviction and years of post-conviction litigation. Likewise, there is no indication that the prosecutor who tried his case was ever "terminated" and in fact retired. Robinson continues to lie and deny responsibility for his large-scale drug conspiracy and the murder that he committed in furtherance of his drug conspiracy.

Robinson's tenure with the BOP has also included several violations, one for assault, and a disciplinary infraction as recent as 2023. Even if his term of custody was blemish free, that is what is expected of Robinson.

Some of the other § 3553 factors likewise favor denying Robinson's request for relief. It does not promote respect for the law to release Robinson when he continues to deny participation in his offenses, nor does it provide for just punishment to release him prior the life sentence that the district court originally intended for him to serve. 18 U.S.C. § 3553(2)(A).

## III.   Robinson's Health and Age Should Not Cause His Release

A defendant is only eligible for a reduced sentenced under 18 U.S.C. § 3582(c) if he shows that "extraordinary and compelling reasons" warrant the reduction; that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

Effective November 1, 2023, the Sentencing Commission amended § 1B1.13 of the Guidelines to define what is an extraordinary and compelling reason. *Washington*, 122 F.4th at 266; USSG Suppl. to App. C, amend 814 (Nov. 1, 2024); USSG § 1B1.13(b)(1)–(6). The amended current policy statement "sets out four enumerated grounds for relief: the defendant's (1) medical circumstances; (2) age; (3) family circumstances; and (4) whether the defendant was a victim of abuse while in custody." *Washington*, 122 F.4th at 266 (citing § 1B1.13(b)(1)–(4)). A fifth catch-all provision includes "other reasons" that "when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* (quoting

10

§ 1B1.13(b)(5)). A sixth provision, *See* § 1B1.13(b)(6), for an "unusually long sentence" does not apply because the Sixth Circuit determined the Sentencing Commission lacked authority to overrule circuit precedent that barred giving retroactive effect to nonretroactive sentencing amendments. *See United States v. Bricker*, 135 F.4th 427 (6th Cir. 2025).

Robinson's motion for a reduction in sentence purports to rely on the age, medical circumstances, "other reasons," rehabilitation, and "unusually long sentence" as grounds for compassionate release. ECF No. 734, PageID.18687-18911.

## A. Age

Robinson (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG § 1B1.13(b)(2). But Robinson's health can be characterized as ordinary geriatric ailments and this does not rise to the level of extraordinary and compelling. Other district courts have rejected ordinary geriatric ailments as rising to the level of extraordinary and compelling circumstances. *See United States v. Holley*, No. 596CR00208SLBSGC1, 2021 WL 2320394, at *5 (N.D. Ala. June 7, 2021) (Lack of rapid decline and refusal to take a stress test for most serious conditions weigh against extraordinary and compelling circumstances warranting

11

release). While Robinson's age might fit the basic requirements for release, it is not the sole or determinative factor guiding whether an extraordinary and compelling circumstance exists and the balance of this factor does not favor release.

### B. "Other reasons" and "unusually long sentence."

Robinson's asserts retroactive guideline amendments, codefendant's reduced sentence, rehabilitation, and an unusually long sentence as extraordinary and compelling reasons for release. ECF No. 734, PageID.22000-22010.

### 1.  Retroactive guideline amendments 505, 782, 788, and 821

Robinson makes various arguments regarding guideline amendments and changes for what can be interpreted as a First Step Act motion within this motion. Many of them have been made and rejected before. ECF No. 657, PageIDs.17712, 17709. To the extent he raises new arguments, they are equally baseless.

Robinson briefly alleged that guideline Amendment 821 to the Sentencing Guidelines would reduce his criminal history to six points resulting in a criminal history category of III. ECF No. 734, PageID.22006-07.

Robinson fails to develop any meaningful argument that Amendment 821 is applicable. In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.). "[A] party may not raise an

issue on appeal by mentioning it in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016).

Amendment 821 to the United States Sentencing Guidelines, took effect on November 1, 2023. *See Materials Relating to the 2023 Criminal History Amendment*, U.S. SENT'G COMM'N, https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment (last visited May 13, 2026). In part, the retroactive portion of Amendment 821 alters the application of the Guidelines for certain offenders who either (A) earned criminal history "status points" by committing the instant offense while serving another sentence ("Part A"); or (B) had zero criminal history points at the time of sentencing ("Part B"). *2023 Amendments in Brief*, U.S. SENT'G COMM'N, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821.pdf (last visited May 13, 2026). Neither provision applies to Robinson.

Robinson was not assessed two points for committing the offense while under supervision, so Part A of Amendment 821 does not apply. ECF No. 734, PageID.22040. Robinson was not a zero-point offender (ECF No. 734, PageID.22041); Robinson was convicted of drug related murder (§ 4C1.1(a)(4)); and

Robinson received an adjustment under § 3B1.1 (§ 4C1.1(a)(10). ECF No. 734, PageID.22040. Part B of Amendment 821 does not apply.

Regardless, Robinson's statutory mandatory penalty at the time of his sentencing was life imprisonment. All of Robinson's arguments regarding guidelines changes and their application to him are irrelevant as his statutory penalty for count one would remain life.

**2. Sentencing disparities between codefendants**.

Robinson believes that because two – less culpable – codefendants received a reduction in sentence, that is extraordinary and compelling. ECF No. 734, PageID.22007-10.  As the organizer and leader of the conspiracy, Robinson is the most culpable defendant. His mandatory life sentence reflects the same. The fact that Robinson's sentence is longer or shorter than other convicted defendants is not extraordinary nor compelling. Robinson was also the only defendant charged and convicted of Count 1, the continuing criminal enterprise charge that resulted in his mandatory sentence of life imprisonment. He is not similarly situated to his co-defendants.

Before the Sentencing Commission amended 1B1.13, some courts exercised their discretion to find extraordinary and compelling circumstances when a highly culpable codefendant's post-sentencing grant of clemency produced a sentencing

disparity in comparison to a less culpable defendant. *See, United States v. Ferguson*, 536 F. Supp. 3d 139, 144 (E.D. Mich. 2021) (noting extraordinary and compelling reasons existed when a defendant "served a slightly longer term of imprisonment than a more culpable co-defendant" because of that codefendant's post-judgment clemency); *United States v. Montgomery*, No. 3:18-CR-00077-2, 2021 WL 1857339, at *3 (M.D. Tenn. May 10, 2021) (noting the more culpable codefendant served "a fraction" of the less culpable moving defendant's sentence such that the disparity was "glaringly lopsided").

But Robinson cannot show a disparity. First, regardless of any association to Robinson, Chambers was not a defendant in the underlying case. *United States v. Chambers*, No. 2:94-CR-80419, 2018 WL 4346909, at *1 (E.D. Mich. Sept. 12, 2018) And, unlike Robinson, Chambers was not convicted of drug related murder and he was eligible for a sentence reduction based on sentencing guideline amendments 782 and 788 for drug offenses. *Id*. *See United States v. Gladney*, No. CR 18-0079, 2024 WL 4682315, at *4 (W.D. La. Nov. 4, 2024).

Moreover, the Sixth Circuit has clarified that "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021). The Sixth Circuit explained in *Hunter* that a sentence disparity between a defendant and his

co-defendants does not constitute an "extraordinary and compelling reason" for a sentence reduction when that disparity was a "fact [] that existed at sentencing." *Id*.

The Guidelines do not suggest relief is available for defendants who argue there is a disparity between their sentence and other defendants convicted of crimes of the same type. *See United States v. Mason*, No. 21 CR. 499 (PAE), 2025 WL 1404626, at *5 (S.D.N.Y. May 15, 2025) (collecting cases) (noting "courts . . . have generally held that the commutations of others' sentences do not merit compassionate release").

Finally, Robinson was the only defendant charged and convicted for violating 21 U.S.C. § 848, the continuing criminal enterprise count that resulted in a mandatory statutory life sentence.

### 3.  Unusually long sentence

Even if Robinson could raise any argument that his sentencing would be different under the law today–which he cannot–*Bricker* forecloses this argument.

While the United States Sentencing Guidelines do provide, in limited circumstances, that a disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed may constitute an extraordinary and compelling circumstance. *See* § 1B1.13(b)(6). The Sixth Circuit has foreclosed compassionate release under § 3582 based on the U.S. Sentencing Commission's

policy statement at USSG §1B1.13(b)(6). *United States v. Bricker*, 135 F.4th 427 (6th Cir. 2025). The Sixth Circuit explained, § 1B1.13(b)(6) "is plainly unreasonable under the statute and in conflict with the separation of powers." *Bricker*, 135 F.4th at 430. In *United States v. McCall,* 56 F.4th 1048 (6th Cir. 2022) (en banc), the Sixth Circuit held that nonretroactive changes in law are not "extraordinary and compelling," and "the Commission cannot overrule *McCall's* determination about the plain text of the statute by promulgating a contradictory policy statement." *Bricker*, 135 F.4th at 438.

### 4. Rehabilitation

The Supreme Court has stated that "[a]cceptance of responsibility is the beginning of rehabilitation," *McKune v. Lile,* 536 U.S. 24, 47, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). Robinson continues to refuse to accept responsibility for this case. Robinson maintains a website where he accepts donations in a campaign for justice on his behalf and a publicly shared request for clemency dated May 1, 2025, that has mirrored allegations of "falsely charged" on "false drug and drug related offense" an reference to a "crooked prosecutor" and of course that he is being refused "any medical treatments" because of his age. (http://www.justiceforolee.com/home.html;

https://www.facebook.com/phyllis.bell.54/posts/this-letter-is-from-olee-wonzo-robinson-who-has-served-32-long-years-in-prison-i/10224708635542351/).

Robinson's claim that he is "uncompromisingly rehabilitated" and has come to terms with the idea that "crime does not pay" when he still states he has been "falsely imprisoned" on "false drug charges manufactured by a former prosecutor" and also alleges his case is "one of the worst prosecutorial misconduct and judicial corruption cases dating back since 1877." ECF No. 734, PageID.22012, 22014, ECF No. 735, PageID.22204. According to Robinson, the corruption does not stop there. Allegedly the court clerk was engaged in obstruction of justice by using threats, intimidations, blackmail, and bribery to sabotage his claims and falsify judge's names on a fraudulent court order. *Id*. at PageID.22205. Robinson cannot even demonstrate the beginning of rehabilitation.

Robinson does not qualify, but granting compassionate release solely on grounds of rehabilitation is explicitly foreclosed by statute. *See* 28 U.S.C. § 994(t).

Robinson argues that he "has exemplified excellent character and conduct as a model prisoner" and has only had "four very minor infractions" in 33 years. ECF No. 734, PageID.22014. Robinson has amassed 17 infractions including an assault with serious injury. ECF No. 722-3, PageID.21591-97.

And a lack of infractions and rehabilitation is the least that is expected of Robinson. "Good conduct and rehabilitation in prison are 'expected from all inmates.'" *United States v. Johnson*, No. 11-20767, 2025 U.S. Dist. LEXIS 138835

18

at *9 (E.D. Mich. July 21, 2025) (collecting cases). Not only is that behavior expected of federal prisoners, but it also is not something a sentencing court should typically have to address. *See United States v. Gale*, 468 F.3d 929, 939 (6th Cir. 2006) (holding that it is "not unreasonable for the district court to place little weight" on the defendant "simply doing 'exactly what he has to do'" under the terms of his sentence). And the justice system expects prisoners, even those without expectation of release, to rehabilitate. *U.S. v. Smith*, No. 3:03-CR-00077, 2026 WL 1258037, at *5 (M.D. Tenn. May 7, 2026).

## C.     Robinson's medical treatment is not insufficient or negligent

Robinson's BOP physician agrees that he is over 70 years-of-age with numerous chronic illnesses. ECF No. 735, PageID.22258-59. His physician also notes that he is receiving extensive medical attention and treatment for all of his health concerns. *Id*. BOP has authority to move for reduction in sentence on Robinson's behalf if they feel it is appropriate do so. Section 3582(c)(1)(A). Just as Robinson has a formal process to request a reduction in sentenced based on medical. *See* 28 CFR § 571.61.

The sentencing guidelines permit the court to consider whether Robinson is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is as risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Robinson's medical

records from the BOP show his medical care is not deficient. Robinson repeatedly references *United States v. Crowell*, 2020 U.S. Dist. LEXIS 147244 to emphasize that BOP's medical neglect put him at risk. ECF No. 708, PageID.18699, 18708-11, 18718. But Robinson's situation and Crowell's are not similar. Crowell was granted release because his history of lupus was known to BOP and documented in his PSR. *United States v. Crowell*, 2020 U.S. Dist. LEXIS 147244 *3. BOP medical personnel misdiagnosed Crowell with syphilis despite his assertion that he had lupus and, despite an order from the court to have Crowell "examined and assessed for lupus by a rheumatologist," FCI Schuylkill failed to do so. *Id*. at *4. Robinson's consistent references to treatment at FCI Schuylkill have no bearing on Robinson's current situation. Yes, he did do a short stint of time at FCI Schuylkill from November 30, 2020, to July 3, of 2023, but after the transfer process he has been at FCI Jesup. Exhibit 1, p.1-2. While at Schuylkill, Robinson made complaints to his local senator stating he was denied any kind of medical services and in a complaint dated October 5, 2022, he stated he was not seen by a doctor since his arrival on November 30, 2020. The medical records his previous counsel provided documented extensive treatment from the BOP during the years 2020-2022.[4]

---

[4] Over 1300 pages of medical provided by defense counsel referenced in ECF No. 722, PageID.21553.

On the contrary, Robinson's medical records indicate–despite Robinson's repeated allegations–he is not being refused treatment. He receives care ranging from chronic care, preventative health, dermatology, oncology, orthopedic, dental care, ophthalmology, imaging, and laboratory testing. *See* Sealed ECF No. 723. Robinson does have serious health issues, but the long-term and specialized care is being provided by the BOP. The Sixth Circuit recently determined that a defendant's allegations of inadequate treatment for chronic care were not so deficient as to warrant intervention and the court did not err by affording more weight to the BOP's medical assessment. *See United States v. Williams*, 161 F.4th 951, 953 (6th Cir. 2025).

There are a number of inconsistencies with Robinson's accusations about his health, especially the allegations regarding lack of treatment for his health conditions. The government provided a summary of Robinson's recent BOP medical treatment demonstrating Robinson is receiving adequate care. ECF No. 722, PageID.21559-61. The hundreds of pages of medical records support that FCI Jesup is responsive to Robinson's medical needs and he is receiving continuous and suitable medical care and monitoring. *See* Sealed ECF No. 723. In his most recent motion, Robinson alleges that he was informed he had a hernia and no action was taken to date. ECF No. 735, PageID.22160. In fact, the records he provided in support of that claim indicated there was an ultrasound done and a CT of the

abdomen/pelvis. *Id*. at PageID.22249-51. And the medical provided by the government notes that his hernia appears to be stable and a surgical evaluation showed a plan for laparoscopy. ECF No. 722, PageID.21561. Updated medical records from the BOP show that Robinson was a "no show" for his January 12, 2026, callout to discuss the recent general surgery consults and failed to show again for his February 4, 2026, medical consultation. Exhibit2, p.1-2.

Many of Robinson's allegations about his health and treatment are demonstrably false based on the evidence he provided, and referenced, or by documentation that has already been provided to the court. Some of the most egregious inconsistencies are outlined below:

| Allegations | Summary of records provided in support in Robinson's supplement | Inconsistencies |
|---|---|---|
| "directives that Robinson be examined by an oncologist every four-six months, Pg. 18-20" ECF No. 735, PageID.22159 | Has a history of PSA bumping up and down. I believe that this is could be within normal physiologic range. I did express that the rise could be also due to return of cancer. Plan: The patient states that since he is feeling well and has had no changes, he would just like to repeat the PSA in six months time. As he is stable and clinically doing well, … we will draw a PSA in 3 months. ECF No. 735, PageID.22180-81 | There is no directive to have him evaluated by an oncologist ever four to six months. His PSA levels are monitored and he has regular treatment for his prostate cancer. ECF No. 722, PageID.21559 |
| "August 20, 2020 directives that Robinson undergo surgery for cataracts on both eyes and undergo surgery on both eyes for glaucoma. pg. 11-13." ECf No. 735, PageID.22159 | "p.11" is an administrative note from 2017 where Robinson will be scheduled for a repeat bone scan and PSA check. "p.12" is an administrative encounter from August 13, 2020 discussing PSA level follow-up. "p.13-14" Robinson was in for a two month follow-up, and records indicate | In the relevant records from Progressive Vision Institute, there is no reference to surgery and records note he is in for "2 months follow-up both eyes. Since the last visit, the affected area is tolerating. The condition severity is moderate. ECF No. PageID.22175 |

| | | |
|---|---|---|
| | the "affected area is tolerating… Condition's severity is moderate." ECF No. 735, PageID.22175-76 | Robinson had surgery on both eyes in 2019. ECF No. 735, PageID.22209-10<br><br>New medical records show consistent visits regarding glaucoma since October 11, 2023. Exhibit 2, p.7 |
| "U.S. Senator Gary Peters conducted an investigation of FCI Schuylkill on refusal to render any medical service for Robinson January of 2023. Pg. 35-40" ECF No. 735, PageID.22159 | Copies of complaints from Robinson which make accusations of false imprisonment and public and judicial corruption. ECF No. 22198-22206 | This is not evidence of an investigation by U.S. Senator Gary Peters, it is copies of complaints Robinson made to Senator Peters dated 8/26/2022, 10/5/2022 and 11/9/2022 |
| "After one of several contacts to Senator Gary Peters office, Robinson was transferred out for eye surgery. Pg.41-45" ECF No. 735, PageID.22159 | Procedure note from April 25, 2019 where Robinson underwent Primary open angle glaucoma of both eyes. ECF No. 735, PageID.22209-22210 | The letters to Senator Peters were from 2022. ECF No. 22198-22206<br><br>This is not evidence that he had surgery after contacts made with Senator Peters. |
| "In February of 2025 the outside bone specialist informed Robinson that he had a torn Rotor Cup and would require surgery. FCI Jesup refused. Pg. 53-56" ECF No. 735, PageID.22160 | Records make no reference to surgery needed. They do indicate "Rotator cuff impingement syndrome of right shoulder" and that Robinson was counseled on rotator cuff tendonitis. ECF No. 735, PageID.22221-22 | Treatment for his multilevel cervical disc disease with radiculopathy and shoulder pain is consistent and ongoing. ECF No. 722, PageID.21560 |
| "On July 21, 2023 Robinson was examined by the medical department at FCI Jesup, Robinson was informed that given his age the government does not have the resources to spend on Robinson. Robinson knees need evaluation suffered injury and not able to climb stairs without | There are 2017 records reference to swelling in bilateral knees. X-ray ordered. No fracture or dislocation. Records note tricompartmental osteoarthritis of both knees. 7/25/17 follow-up record where Robinson received steroid injections. ECF No. 735, PageID.22236-38<br><br>There is a record with Robinson's subjective complaints. ECF No. 735, PageID.22239 | No reference in any of these pages to the serious accusation that government does not have resources to spend on Robinson. In fact, the references to specialist treatment and imaging studies show the BOP is invested in keeping Robinson healthy. The hundreds of pages of medical records the court has received exonerates the accusation that BOP is withholding treatment. The government outlines some of the recent treatment, when |

| | | |
|---|---|---|
| pain, neck injury. Pg. 68-80"<br>ECF No. 735, PageID.22160 | There is an order for an orthopedic surgery consult due to history and a noted of a neurosurgery consult with a CT scan that was conducted on 7/16/24 ECF No. 735, PageID.22240<br>Record from 6/2/16 encounter for complaint of left arm atrophy that references his 2014 fusion.<br>ECF No. 735, PageID.22243<br><br>07/2024 evaluation from SGPA Neurosurgery after Robinson had a fall from his bunk. CT of spine was done on 7/16/24.<br>ECF No. 735, PageID.22245 | Robinson was over the age of 70, with chart at ECF No. 722, PageID.21559-61 |
| "In May of 2025 FCI Jesup informed Robinson that he had a hernia on his right side. No action has been taken to date. Pg. 81-85." | Encounter date from 7/31/25 noting that an ultrasound was done on 7/9/25 and CT of abdomen/pelvis was requested.<br>ECF No. 735, PageID.22249-51 | ECF 723, Sealed Exhibit, p.2, 10/28/25, inguinal hernia, … has general surgery pending.<br>12/1/25-hernia appears to be stable, not wearing issued hernia belt;<br>12/3/25 surgical eval: plan laparoscopy<br>ECF No. 722, PageID.21561<br>1/12/26 – no show for callout to discuss recent general surgery consult. 2/4/26 - no show for consult.<br>Exhibit 2, p.1-2 |

Robinson is 73 years old. Medical records provided by Robinson and the BOP confirm that his health is well maintained given his age. *See United States v. Larkin*, No. 2:21-CR-20755-TGB-APP, 2025 WL 582549, at *3 (E.D. Mich. Feb. 21, 2025) (Noting that after the court reviewed records, Larkin failed to set forth extraordinary and compelling reasons because BOP provided continuous and adequate medical care, without undue delays, and that the BOP did not alter or manipulate records.)

## Conclusion

Robinson's motion for reduction in sentence should be denied.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

Dated: May 18, 2026

s/*Christopher W. Rawsthorne*
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502
Telephone: (810) 766-5177
Email: Christopher.rawsthorne@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

s/Jessica Stanton
United States Attorney's Office